# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| JEFFERY NEWSOME, )  )  Plaintiff, )  ) vs. ) ) OFFICER RUSSELL JONES, *et al.*, ) ) Defendants. ) | Case No. 4:12-cv-00019-VEH-JEO |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

The undersigned entered a report on July 3, 2014, recommending, *inter alia*, that the medical defendants' (Nurses Edwina Thomas and Dana Johnson) motion for summary judgment be denied with respect to the plaintiff's denial of adequate medical care claim. On July 18, 2014, the medical defendants filed a motion for reconsideration of the report and recommendation or, in the alternative, objections thereto. (Doc. 50). The plaintiff filed a response to the medical defendants' motion on August 15, 2014. (Doc. 53). The undersigned has treated the motion as one for reconsideration and finds that it is due to be denied. Accordingly, this supplemental report and recommendation will address the medical defendants' challenges.

### DISCUSSION

**Exhaustion of Administrative Remedies**

The medical defendants' first objection is to the finding that a genuine issue of material fact exists with respect to whether or not the plaintiff exhausted the medical grievance procedure available to him at the St. Clair Correctional Facility prior to bringing this action. The medical defendants are correct in pointing out that because the plaintiff is a prisoner his claims are subject

to the Prison Litigation Reform Act of 1995 ("PLRA"), which establishes restrictions on the ability of prisoners to file civil rights actions in federal court. In particular, the plaintiff's claims are subject to 42 U.S.C. § 1997e(a), which, as amended by the PLRA, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

In this instance, it is undisputed that the St. Clair Correctional Facility utilizes a medical grievance procedure to address complaints from inmates regarding their medical care. In her initial special report, Nurse Thomas testifies that "[t]he grievance process is initiated when an inmate submits an informal Inmate Grievance form to the H.S.A [Health Services Administrator] through the institutional mail system." (Doc. 14-1 at 4,[1] ¶ 10). Upon review of the grievance, H.S.A. "provides a written response within approximately five (5) days of receipt." (*Id.*) This written response is noted on the original Inmate Grievance form which also contains a notation advising the inmate as follows:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A GRIEVANCE APPEAL FORM FROM THE HEALTH SERVICES ADMINISTRATOR. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

(Doc. 14-1 at 4). The administration's response to the grievance appeal sometimes includes bringing the inmate in for a personal discussion with the medical staff and/or the Director of Nursing. (*Id.*) In any event, the procedure calls for a written response to the grievance appeal within approximately five days. (*Id.*)

---

[1] Page number references are to the electronic numbers assigned by the Clerk of the Court.

In her renewed affidavit, Nurse Thomas states that she "investigated the existence of any grievances filed by [the plaintiff]" by reviewing the "grievance log" and other unspecified records and found no evidence of any October 2, 2014 grievance or grievance appeal. (Doc. 50-1 at 3, ¶ 4).[2] The medical defendants acknowledge that the plaintiff has stated in his sworn complaint that he "filed a grievance on the medical staff," and they concede that this statement is "conceivably" sufficient to create a genuine issue with respect to whether or not the initial grievance was filed. (Doc. 50 at 4). However, they argue that the plaintiff has submitted nothing to show that he proceeded to the second step in the grievance process, *i.e.* an appeal. In that regard, the defendants are correct in their assertion that a prisoner must complete all steps of an administrative grievance process in order to have effectively exhausted administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, the plaintiff has testified unequivocally that he submitted a medical grievance form to an officer and nurse who were making rounds in the segregation unit in which he was housed, and that he had no control over what happened to the grievance form after that. He also states that the grievance "was not answered," and that he was never called into the medical unit for a review of the grievance. (Doc. 53 at 2).

Failure to exhaust administrative remedies is an affirmative defense the burden of which falls upon the defendants to prove. *Jones v. Bock*, 549 U.S. 199 (2007). In this instance, in light of the proof presented in the plaintiff's response, the defendants' motion for reconsideration fails to carry that burden. The defendants' allegation that they have searched their records and found no evidence

---

[2] Nurse Thomas also states that "out of an abundance of caution" she asked the Health Services Administrator to review the grievance logs for a grievance filed by the plaintiff, but that none were found. (Doc. 50-1 at 3). However, for purposes of summary judgment, affidavits or declarations must be made on "personal knowledge." FED. R. CIV. P. 56(c)(4).

3

of an initial medical grievance or grievance appeal simply creates an issue of fact in the face of the plaintiff's sworn testimony that he submitted an initial grievance form. Furthermore, under the particular facts presented in the record, the defendants' reliance on the assertion that the plaintiff failed to appeal any grievance is also insufficient to show he failed to exhaust administrative remedies. The plaintiff has testified that he did not receive a response to his initial grievance. Under that circumstance, the mere showing that no appeal was taken is insufficient to establish a complete failure to exhaust administrative remedies. This is true because a prisoner exhausts administrative remedies when he submits a timely grievance and jail officials fail to respond. *See Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007) ("[w]hen prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA"); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 234 (6th Cir. 2006) ("[t]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance"); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) ("administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'") (quoting *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002)). Accordingly, with respect to the exhaustion issue, the defendants' motion for reconsideration is granted to the extent that the court has considered the additional arguments therein. However, upon such reconsideration, the court continues to find that genuine issues of material fact exist with respect to this issue, and summary judgment is therefore due to be denied.

**Eighth Amendment Claim**

The medical defendants' second objection is directed at the court's finding that genuine issues of fact exist with respect to the plaintiff's Eighth Amendment denial of adequate medical care

claim. (Doc. 50). The defendants assert that the court's conclusion is based upon a misinterpretation of certain statements attributed to them and a misinterpretation of certain documentation before the court. (*Id*. at 5).

With respect to the documentation, the defendants refer to footnote 22 in the report and recommendation (doc. 49 at 14, n.22) in which the court notes the plaintiff's "body chart" time of 12:38 p.m. corroborates his allegation that he was denied care for over forty minutes. Nurse Thomas now testifies in her renewed affidavit that nurses "often wait until the conclusion of the appointment to record the time of the examination" and therefore "based upon [her] recollection of the events" the times represented on the body charts in this instance represented the times the examinations *ended*, not the time they *began*. (Doc. 50-1 at 5, ¶ 6). However, these statements appear contradictory to Nurse Thomas' earlier testimony in which she stated that the nursing staff did not receive verbal orders from the site physician (via telephone) regarding the care of the laceration over the plaintiff's left eye until 12:40 p.m., two minutes *after* the time she now states represents the point at which the appointment ended. (Doc. 14-1 at 5, ¶ 13; Doc. 14-2 at 19). The court notes that the "Correctional Medical Services, Inc. Provider's Orders" form lists the *start* time, presumably for the orders, as 12:40. (Doc. 14-2 at 19). Furthermore, in spite of this recently asserted interpretation of the body chart information, the fact remains that the plaintiff has testified unequivocally he laid bleeding on the infirmary floor for over forty minutes without care as both nurses walked past him "numerous times." (Doc. 48 at 7; Doc. 53 at 3).[3] Taken as true for purposes of summary judgment only, the plaintiff's statement creates a genuine issue of fact with respect to the defendants'

---

[3] In his response to the defendants' motion, the plaintiff reiterates that "[n]o trauma evaluation was done on [him] or any treatment at all until [he] was moved in to the exam room some 40 plus minutes later." (Doc. 53 at 5).

knowledge of his injury, and whether or not the delay in responding to that injury is adequately explained.

Nurse Johnson also submits a supplemental affidavit in which she reiterates that she "immediately began the process of evaluating [the plaintiff] as soon as [she] was notified that he had arrived in the health care unit." (Doc. 50-2 at 3). She acknowledges that she does not know how long the plaintiff had been in the unit at the point she began her evaluation, but states that her evaluation began "as soon as [she] knew of his presence in the health care unit." (*Id*.) She denies witnessing him having to wait for forty minutes before being examined. (*Id*.) However, this evidence is directly refuted by the plaintiff who states that he was thrown on the floor "in plain sight of both the nurses station and the treatment room and was left there for 40 plus minutes stripped to his underwear with blood and feces all over him, [and] bleeding from several areas." (Doc. 53 at 3). He also states that the infirmary is not large and on the weekend only one end of it is utilized, and therefore Nurses Thomas and Johnson "had no choice but to see [him] when [he] was brought in for treatment." (*Id*.) More importantly, he states unequivocally that Thomas and Johnson walked past him "numerous times" as they worked to clean the feces off Officers Landers and Jones. (*Id*.)[4] It is clear therefore that a genuine issue of fact exists with respect to when Nurse Johnson became aware of the plaintiff's presence in the health care unit and how long she waited before rendering aid. Based upon the facts alleged by the plaintiff, it is not unreasonable to draw the inference that he was deliberately ignored for a significantly long period of time as he laid on the floor with

---

[4] The plaintiff asserts that Nurses Thomas and Johnson were preoccupied with cleaning the feces off the Officers' uniforms and failed to check on him despite the fact that a puddle of blood was forming on the floor. (Doc. 53 at 3-4). During this time, a third un-named nurse voiced her displeasure at the treatment (or lack thereof) the plaintiff was receiving. (*Id*. at 4).

multiple injuries. As stated in the initial report and recommendation, where an inmate has suffered a serious and painful injury, "it may be that deliberately indifferent delay, no matter how brief, would render the defendants liable as if they had inflicted the pain themselves." *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990).

The defendants also object to the finding that genuine issues exist with respect to whether or not the medical staff allowed correctional officers to overrule their recommendation that the plaintiff remain in the infirmary after the initial treatment was concluded. (Doc. 50 at 5). This finding was based in part upon Nurse Thomas' acknowledgment that she "expressed a need to hold [the plaintiff] in the health care unit for some period of time in order to contact [the] site physician to receive further instructions." (Doc. 14-1 at 6, ¶ 15). The court concluded that this statement created a reasonable inference that the plaintiff's injuries may have required further treatment. (Doc. 49 at 19).

The defendants contend the court misconstrued Nurse Thomas' statement. In her renewed affidavit, Thomas clarifies her earlier affidavit by explaining that her statement regarding the need to hold the plaintiff in the infirmary for a period of time was in reference to the instructions needed from the site physician with regard to the application of the steri-strips, not with regard to any need to hold the plaintiff *after* he had been initially treated. (Doc. 50-1 at 4). Nurse Thomas also asserts that "there was no need for [the plaintiff] to remain in the Health Care Unit or infirmary to receive additional treatment" once the steri-strips were applied. (*Id.*) However, in concluding that genuine issues exist with respect to this issue, the court also noted the plaintiff's testimony that Officer Landers had overruled Nurse Thomas' recommendation by stating that the plaintiff "isn't going to a cell, he is going to an outside cage." (Doc. 48 at 8). The plaintiff explains that Officer Landers

was responding to Nurse Thomas' statement that "he (the plaintiff) has to be held in the infirmary but we don't have an empty cell so we are gona (sic) have to release someone in a 1 man cell." (*Id*.) Therefore, despite Nurse Thomas' clarification, the statement attributed to her by the plaintiff still creates an inference that she was recommending he be held in the infirmary beyond the initial examination time. Her attempt to now clarify her statement merely reinforces that there are issues of fact to be resolved by the fact finder.

Additionally, the plaintiff testifies that he was taken from the infirmary and placed in an outside cage even though he had swelling on the left side of his head, was complaining of broken ribs, and was having trouble standing up straight. (Doc. 48 at 8). Coupled with inmate Jeffery DeFee's affidavit, which states he observed the plaintiff with swelling and bleeding on his face and coughing up blood as he was being taken to the outside cage (doc. 43 at 21-22), it seems clear that these additional facts could lead a reasonable jury (or fact finder) to conclude the medical defendants were deliberately indifferent in allowing the plaintiff to be taken to the cage in his then present condition. In other words, there are sufficient facts in the record beyond Nurse Thomas' statement which demonstrate that genuine issues exist with regard to whether or not the medical defendants violated the plaintiff's Eighth Amendment rights when they allowed officers to take him to the cage. Accordingly, with respect to the Eighth Amendment issue, the defendants' motion for reconsideration is granted to the extent that the court has considered the additional arguments therein. However, upon such reconsideration, the court continues to find that genuine issues of material fact exist with respect to this issue, and summary judgment is therefore due to be denied.

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, and for the reasons set forth in the initial report and recommendation (doc. 49), the magistrate judge **RECOMMENDS** that the special report filed by Officer Denson be construed as a motion for summary judgment and, as such, that it be **GRANTED** and the claims against Officer Denson be **DISMISSED WITH PREJUDICE**. The magistrate judge further **RECOMMENDS** that the remaining defendants' special reports (doc. 14 & 18) be construed as motions for summary judgment and, as such, that the motions be **DENIED**. Specifically, the court again finds: (1) Officers Landers and Jones' motion for summary judgment be **DENIED** with respect to the excessive force claim; (2) Nurses Thomas and Johnson's motion for summary judgment be **DENIED** with respect to the denial of adequate medical care claim; (3) Officers Landers, Jones, and Marcano's motion for summary judgment be **DENIED** with respect to the denial, delay, and/or interference with medical care claim; and (4) Officers Morris, Jackson, Dakin, Hopkins, Scott, Gray, and Northcutt's motion for summary judgment be **DENIED** with respect to the conditions of confinement claim.

The magistrate judge also **RECOMMENDS** that the remaining claims in this action be referred to the undersigned for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed.

2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

**DONE**, this the 20th day of October, 2014.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge